Good morning, everyone. Welcome to the Ninth Circuit. Judge Hurwitz and I are also very pleased to welcome back Judge Ezra, originally a district judge in Hawaii and now based out of Texas. Thank you. I'll be calling the cases in the order that they're listed on the calendar. The first three cases, however, Fernandez-Melendez v. Garland, Munoz-Donas v. Garland, and Dial v. O'Malley have been submitted on the briefs and records. So the first case up for argument is Zuehlsdorf v. FCA US LLC. Good morning, Your Honors, and may it please the Court. I'd like to reserve five minutes for rebuttal. All right. We're here again today, one year later, on a renewed motion for summary judgment. This Court, having reversed the district court on its previous summary judgment entry, after that reversal, we went back down to the district court. The district court gave the defendant a special opportunity to brief a new summary judgment motion on a different issue, and here we are again. Well, it wasn't a special opportunity. The defendant had moved for summary judgment on that issue before, but the judge never reached it. Fair enough. We did oppose, but your point is well taken, Your Honor. I appreciate it. I'm Judge Hurwitz. It's a case about a well-known defect in a transmission, the JATCO transmission in model year Dodge Caliber and Jeep vehicles, and the district court found that we had no evidence of causation linking the defect itself to the defect symptoms. In particular, the judge concluded that we had not ruled out that the symptoms could have been caused by operator misuse, low tire pressure, or a plugged exhaust system. Can I cut right to the chase on this? I've read your expert's report, the supplemented one in the declaration, and I can't find any point in the report where your expert says it's more probable than not that the problems with Mr. Zulsdorf's car were caused by the alleged defect. We can get into later what the alleged defect is. Am I right in reading it that way? I disagree, Your Honor. Our position is... Well, don't tell me what your position is. Tell me where your expert opines that the problems with Mr. Zulsdorf's car were more probably than not caused by the alleged defect. So the expert says that Mr. Zulsdorf has a transmission that's identical to all of these transmissions in the class vehicles, and that the defect symptoms that were experienced by these vehicles were caused by that transmission. Well, he doesn't say that. See, that's my problem. He says the alleged defect, and it's difficult to describe the defect here, but I take it the defect is that the transmission is designed so that if it's filled to a certain level, it may overheat, but if it's filled to a lower level, it will not. Is that a fair summary of what the defect is? Yes, and that it is filled to that level, and that the system is, in fact, closed, right? So that the level can't be changed unless the system is cracked open. It can't be changed. After all, your whole theory of damages in this case is that the way to fix the defect is to lower the level of the transmission fluid, correct? Yes, that's correct. Okay, now I want to get back to that, but I want to just stick with this for a second. And so I read your expert's report, and he says, I never examined Mr. Zulsdorf's car. There could be a whole series of reasons why the car exhibits these symptoms. One of the reasons could be this alleged defect in overfilling of the transmission fluid, and then if he just said, it's my opinion that that's what caused it, I would think you could defeat summary judgment, but he never says that. That's my difficulty, and I'm just, it's a factual problem. I can't find anything in his opinion where he says that. He talks about the class of cars having this problem, and he says, I guarantee you that some of them had this problem, because otherwise there wouldn't be this email exchange. But where does he... He says that the defect causes the defect symptoms in the class vehicles. And so I think there, he says it directly. Now again, he talks about the class vehicles in general, but all of the class vehicles have the same transmission, and he says that the plaintiff's vehicle has this transmission. Well, it may cause it, but is it more probable than not? See, that's my difficulty. You guys, you could have put on an expert who said that. It's more probable than not. I think at summary judgment, the burden is to prove that a juror could find at trial whether it's more probable than not. A reasonable juror could find that it's more probable than not if the only basis for the juror reaching that conclusion, which I think is true in this case, is the expert's report. And there, I don't think that's true. So I actually think the strongest evidence, if this is all right, is the testimony of the mechanics and the worksheet from the mechanics from the certified dealerships that say that the problem the plaintiff experiences was caused. And here, the worksheet, we have the... Can you do me a favor, counsel? It would be helpful because I think this is... If this goes to the jury, it's a weak case. But certainly, we've seen situations where the reports don't look too good. It goes to the jury and the expert's a little better on the stand. And I'm trying to figure out if you get past that threshold. So can you nutshell what evidence you have that creates a tribal issue? So you've got your plaintiff who's testifying to symptoms, the shuddering, etc. We have the expert that testifies that these defects cause these sorts of defect systems. I think, again, the strongest evidence is from the dealerships themselves. Where does he say that it caused it? And I would point you again... Is it ER 1460? I have... Hang on just a sec. The expert testimony. I have the expert testimony in 1825, and then where he says he uses the exact word cause. And again, I apologize that he didn't repeatedly use the magic word cause in the expert report, or more likely than not. But it was on the citation previously given, I think 1826. So let me back up for a minute. But I do have a bucket of evidence outside of the expert report. You've got the worksheet, and I want to ask you about the worksheet. I was going to have you get back to that. So he experiences his symptoms. He doesn't have any expertise. He takes it to the mechanic, and the mechanic says what? They say that the transmission is what is causing the problem. The first time they look at the transmission, they say it will take further work. What about the transmission? What about the transmission is causing the problem? So they said... What issue in the transmission? They said it was a transmission overheating problem, which again is what the defect would cause. We're talking about 2014 there, right? Yeah, 2014. Okay, so I have two questions about that, specific factual questions. One is the worksheet does seem to give some support to your case, but I can't find any... You don't cite it in your briefs. Yeah, that's correct. And you never cited it in your summary judgment papers below. We did in Statement of Undisputed Material Facts number 21 through 41. I can't recall... You see, I don't see any argument in your brief below that this worksheet establishes causation. Am I wrong? I can't remember where we wrote it in the motion, the text of the motion itself, but it is referenced repeatedly as Exhibit R to the Zuhlstorf... Okay, and then I had one other question about the 2014 repair. Okay. The 2014 repair put the transmission fluid at a lower level. That's what the worksheet says. We put it at a lower level at a certain temperature, and that's within the range that even your expert says is supposed to be okay. So there's no change in the transmission fluid level between then and 2018. At least there's no testimony about it. How could any of the 2018 problems have been caused by the defect? Because the transmission itself needs to be basically replaced. Well, see, but that's not... You've been up here once. You came up here once. What was your theory of damage? And the court says the theory of damage is the defect is repaired. The problem is fixed by lowering the transmission fluid level. And so I don't think you can now claim a different theory of damage because you've been up here once. It's law of the case. Yeah, I mean, for what it's worth. My understanding is there were two issues, the auxiliary cooler issue and the transmission level, and that to fix the transmission fluid level, you actually do need to crack open the transmission. But I understand. If it's law of the case, then I can't argue that. Yeah, my last question about 2014, and this is this. If your theory of damage, which I think you're now stuck with after the last appeal, is that it's a $24 problem to replace the transmission fluid and to lower it to a lower level, how does your client have any damage? Well, at the very least, if you accept the appellee's argument that the problem was fixed in 2014, which is not our position, and we don't think that's what the worksheet shows, but if you accept that position, then at least he was damaged from the purchase of the vehicle through that 2014 repair. I would agree with that theory, except your theory of damage, the one that you're now here with the second time, is that it's the cost of replacing the fluid that is the theory of damage, and your client didn't pay anything to have the fluid replaced. Well, that and sort of the problems that he had driving it and things like that. Well, but that's not, I mean, if that's your problem, then you've got a class certification issue because everybody has different problems. But, see, I think I thought, this is why I'm asking you questions about this, I thought after the last time you came up here, the court said your theory that everything needs to be fixed and replaced completely is not supported by the record because your client didn't have the kind of transmission, the cooling system that your expert's thing was based on, but you do have a valid theory of damages based on $24 replacement cost. And so I accept that. And my question is, but your client got a free replacement, so how does he have any damage at all? I guess I would have two, like, two responses. The first is that's really not, you know, the issue today, which is whether we have proof of causation, right? That was the basis of the order. I can affirm on any basis that the record. And then the second argument would be that we don't think, we dispute that the problem was fixed at the Redlands dealership. Our position is that it wasn't. Well, but see, but what's your evidence that it wasn't? If you want to rely on the sheet, the sheet says we put it at the appropriate level. But when our client talks to the dealership, the dealership said, you need further work on your transmission, that this problem isn't fixed. In 2014? Yes, and that's in the deposition testimony. I think the problem with your case is that there is a suggestion at some point of an inherent design defect that even if you set it at the right level, it's still an overfilling issue. But at some point during the litigation, you need to sort of pick a theory and then piece all of the evidence together, and it sort of, in this case, it shifts. So I'm having a hard time piecing together what is the theory inherent defect, or is it overfilling that then got fixed, and what evidence really ties into that core theory. And I'm sympathetic to why the district court struggled with the case. I understand as sort of like a theoretical matter or as a practical matter that that's an issue to struggle with. But I don't think it's a struggle as a legal matter, because the district court found there was no evidence of an inherent defect. And again, when it came up on the first summary judgment motion, and when it came up, this court affirmed that portion of the ruling. So as a matter of law, there's no evidence of another defect, so it can't be another defect that caused the recurring problems with the transition. But your expert says, and I think I'm summarizing this correctly, so correct me if I'm wrong. Your expert says the problem is, I don't know, I'm not sure how to describe the defect, because your theory changes through the trial. First it's the specifications in the manual, and later on it's something else. But your expert says, and I think he's right, the defect is that if you fill this too high, the transmission doesn't work. It works perfectly well, he says, if filled at certain levels. And so the evidence is, the only evidence is that in 2014, it was filled at a level that your expert says was okay. So how was it defective thereafter? And so, again, I disagree. Not only because our client continued to experience the defect after, but also because the mechanic themselves said that the transmission needed further work. But how can you, remember, your defect in this case is that the only defect that you plead, the only defect that you put in evidence about, is that if the fluid level is too high, there will be a problem. You don't put any other evidence in about any other defect in the transmission. So that's the theory of the case. It's all about fluid level. So once the fluid level is lowered, how is there a defect in the transmission? Well, again, there's no evidence of any alternative causation of the defect symptoms. But is that your theory, that it's an overfilling issue only? My understanding is to fix, like, the fluid level defect, you have to actually crack open the transmission. But it is a problem with the level of the fluid in the transmission. That's my understanding. In looking at your expert, he says there are literally hundreds of different reasons why the vehicle could have this problem. Is this the cross-examination and deposition? Yeah. So a few things. And we did deal extensively with the deposition testimony in our reply brief. But first off, he does repeatedly start to explain why the fluid level actually caused the defect in the vehicle. And then the deposition gets cut off. So if you look at the pages that you're referencing, and particularly 4ER772 and 4ER773, he begins to explain why the fluid level defect caused this problem, and then he's cut off mid-explanation. So I don't think that deposition testimony is actually particularly helpful or stands for the proposition that you believe it does, Your Honor. But even if it did, there's this Ninth Circuit case, Beeler v. Klepp, that we cite in our brief, 633 F2D 531, that says that you cannot win summary judgment simply through cross-examining an opposing expert, right? And so I think relying on this sort of cross-examination, which again is incomplete and doesn't actually provide what the expert said, is unfair. All right, thank you, Counsel. Our questions actually took you a little over time, but I'll give you two minutes back on rebuttal. Okay, thank you so much, Your Honor. Morning, Your Honor. May it please the Court? My name is Tom Azar. I represent Defendant Appali FCA US. And so something I want to, because I think the Court has hit on some key issues with regard to what is the defect theory in this case, and I want to. I think the big issue is in a summary judgment review, why is there no material issue of fact, genuine material issue of fact here, from your perspective? Your Honor, let me address that by an analogy and then let me explain how the different pieces fit together. So tomorrow I file a lawsuit and I sue Grape-Nuts Cereal, and I say Grape-Nuts Cereal is defective. And I say Grape-Nuts Cereal is bad. I have an expert who will say it causes obesity. I even attach a picture of myself. I'm definitely not in shape. And then I submit that to the Court. There's still a crucial piece missing. Did I ever eat Grape-Nuts? Well, is there? See, what's strange about this case, and Judge Wynn points out that it comes up to us after a lot of wrangling, is if you buy a box of Grape-Nuts and they're deficient, then you haven't gotten what you paid for. And there ought to be a theory of damages. If you buy a car with a transmission that's deficient in some way, even because of the filling issue, then you haven't gotten what you paid for. Normally we would give you benefit of the bargain damages in such a case. So if this case were at an earlier stage, I would say the evidence that the transmission is defective means that the plaintiff didn't get what he paid for and there ought to be some measure of damages. What's troubled me about this case is that we're not at that early stage. But don't you agree if we were at that stage, summary judgment, he wouldn't have to show that it actually caused him a problem? He just bought something that it wasn't worth as much as it should have been. Your Honor, I think definitely at the pleading stage. An allegation of that would be totally sufficient. Even at the summary judgment stage. Somebody who buys a defective product doesn't need to be injured by it. It doesn't need to cause him a problem. It's just he hasn't gotten what he paid for. I think that's definitely an argument that could be made. Here, though, the situation is a little bit different. Because here, so the defect theory mutated through a couple different variations. It started off with it didn't have this external cooler. Turns out the external cooler is actually on the vehicle. It then changed to, or part of that first, the preliminary expert report of Mr. Stapleford was then the level specified on the dipstick. Right, and then we learned that this one didn't have a dipstick. There's no dipstick. So what Mr. Stapleford switched it to is this. This is what they refer to as the service procedure. Because you're right, I believe one of your honors pointed out they don't claim that there's some inherent problem, at this point in the case, with the transmission. They say this service procedure that FCA gives to dealerships when they're going to service the transmission or do a repair to it, that this service procedure basically, when you do the procedure, you have to plug it into a computer, you get the temperature, you use a special dipstick because there isn't one, you take the measurement, you compare them on this chart. Mr. Stapleford says the high ranges at each temperature are wrong, but the low levels are right. And that's what he proposes for his repair. So this service procedure, plaintiffs have never argued and submitted no evidence that this procedure is used when vehicles are created, when vehicles are built, and it's not. Well, there is some evidence, though. My problem is they've failed to argue it to us and maybe to the district judge, but they do have the service sheet from the first 2014 service which says the transmission level is high. And they have testimony from their client who says, I never changed it from the time I bought it until the time they looked at it. So wouldn't that suggest that it was filled too high at manufacture? Well, two points, Your Honor. So the dealership finds that in the 2014 repair, the dealership finds, okay, we look at the transmission because they're taking it apart because they're doing a transmission-related repair, the cooler bypass valve. Right. So there is a reason why, I mean, this is the first of two instances. I know what they're doing. Don't they say in the 2014 technician report the transmission level is, the fluid level is at the level that their expert says would cause a problem? Yes. Okay. Then they adjust it. They say they adjust it. Then they adjust it. And they bring it down to the level where their expert says, wouldn't cause a problem.  Okay. So isn't that evidence that it left the factory at too high a level? It may very well have, Your Honor. But the point I'm trying to make is not that, I mean, because all parts have tolerances. These components are going to have, I mean, that's when the vehicles are built. That's why there is a range and not a specific number because there's tolerances of the component for how much fluid you're going to have. You're never going to get it precisely right. And so at the time of manufacturing, there is evidence in the record of this, and it's undisputed evidence, or I should say it's uncontradicted. There's nothing to the contrary. At ER 0196, this procedure with the measuring and the temperatures and the ranges is not how these components are created. No, I understand that. And you're arguing the class action, and I'm trying to think about Mr. Zulsdorf's case. Yes, Your Honor. There may not be a good class action here. Mr. Zulsdorf may have a claim for $24 or maybe not. But there is evidence that when he arrives at the dealership in 2014, the level of his transmission fluid is too high by his expert's reckoning.  Correct, Your Honor. Okay, and there's no evidence that it was changed between the time it left the factory and the time that he got to the dealership. So isn't that some evidence that Mr. Zulsdorf's car, not the class of cars, had a transmission fluid level that was too high? And it certainly could. That could be construed that way. But that's not the defect that plaintiffs are trying to bring. Because plaintiffs have chosen their defect theory specifically, as you point out, Your Honor, this is a class action case. They've chosen their defect theory with an eye towards class actions, with an eye towards class certification. And so they have chosen to make it about this, this service manual procedure, which is not how the vehicles are created. It's not used often. These vehicles, the owner's manual, user's guide, the reason the vehicle doesn't have a dipstick is because you're not supposed to check the transmission fluid very often. It's not supposed to be a thing that happens very often. You don't actually, unless you have a, you know, the vehicle has a use cycle like a police cruiser, you don't even change it until after 120,000 miles. So plaintiffs have chosen to make this case about this service procedure, that a dealership, not about the creation of vehicles, but what a dealership would do if a vehicle came in. Is a service procedure a product defect? It's different. I've been trying to wrap my head around that. That's why I've been asking this. The judge says, I assume there's a defect. We, in the last time through, say we assume there's a defect. We're only looking at what the measure of damage is for the defect is. But isn't it, didn't they at least introduce evidence from which a reasonable finder of fact could find that the defect is that the transmission was designed in such a way that a lower fluid level, a higher fluid level would cause it to overheat? They haven't really, they haven't really gone there, Your Honor, and I assume the reason is because you, the problem with saying your defect would be something was filled too high. Is that, I mean, there's all sorts of things on any product, especially a vehicle, that you could fill too high. Like is an engine defective if it's going to malfunction if the oil, if too much oil is put in? I would say that's not a product defect. What this case is about is a service manual defect that might or might not be applied, and what plaintiffs have is no evidence. Okay, but let's go back. Let's assume that it is a service manual defect. The car is serviced in 2014, and again, I'm looking at this. I don't know why nobody makes a big deal of it, but the worksheet says we service it and we put it at a level that is consistent with their expert's report that it would function okay. Correct? Correct, Your Honor. Okay, so do they have damages up to that? I'm having difficulty seeing damages from the defect after that point for Mr. Zulsdorf's car. There may be, you know, class members who have other problems. Doesn't he have damages up to that point? If he was pursuing a defect theory that every vehicle was filled too high or that his vehicle was filled too high, but that's not— But his was. There's evidence that his was. There is, yes. If he had to pay for the adjustment of the fluid, would he have a claim for $24? If he had to pay for the adjustment of the fluid, that gets complicated. I'm probably making it too complicated because the vehicle is under warranty at that point. Well, that's right. No, I want to come back to that, but let's assume no warranty. So he's got a problem, it's filled too high. He's got evidence it's filled too high. They've got to do something to adjust it down, and they charge him for that. That would be damage to him, would it not? I believe so, Your Honor. I believe that would be damage to him. I mean, there would be lots of other issues. Okay, and then you're saying it was under warranty. Right, correct. The vehicle's under warranty at that point. There's another issue that nobody argues in the briefing, Dennis, which is that even if there was damage, he didn't suffer it because they fixed it for free. Correct, Your Honor. In the renewed summary judgment motion, mindful of getting wrapped on the wrist for trying to raise anything new, we kept it specifically to anything we'd raised in the prior summary judgment motion, and damages had already been addressed by this court. So we were not going to present that again and try again with maybe better or different arguments. But the causation issue, and this is what Judge Bernal points to, he points to, okay, you've got a service manual procedure. There's a lot of ways that a plaintiff could show that procedure impacted it or impacted this plaintiff. You could show it was used to fill the vehicle in the first instance when it was built. You could show it was used at some point. You could show later on the vehicle was serviced and that its fluid level jumped, suggesting that someone at some dealership raised the level, followed the allegedly erroneous service manual. But after Judge Bernal goes through all those options, he correctly points out, there's no evidence of any of that. Because the only time it was serviced was 2014. Correct. And there's no evidence that the manual, that it was filled too high at that point. Correct, Your Honor. They looked at something else. They looked at something different than the service manual. There's different ways. I mean, obviously, there's lots of guidance kicking around the company to help a mechanic. The mechanic is the expert on the scene. The mechanic is the person trusted to figure out what's wrong. FCA gives lots of guidance to mechanics in the form of service manuals and other sorts of communications. But you can see our problem with this case, at least mine, and I think you're hearing it from the other judges. It's hard to figure out in this case precisely what the alleged defect is. The other side says it's the transmission, but their expert says the transmission works fine as long as you don't fill it too high. You say it's the manual, but there's no evidence in this case that anybody ever looked at the manual. But it comes to us with the presupposition that there's a defect. So given that, what is the defect? Do you think it's the manual? I think the defect is the manual, Your Honor. How can a defect in a manual be a product defect? Isn't that just negligence? Well, it could be. Because remember, plaintiffs are pursuing a variety of claims, consumer fraud. Essentially, I believe their theory is you had this bad service manual, you knew it was wrong, and you didn't correct it, and you sold me a product that's associated with that service manual, and therefore I'm entitled to damages. In terms of knowing what the defect is, I think the thing to look at is what plaintiffs submitted with their summary judgment opposition round two, which is Mr. Stapleford's updated declaration. And what he says is that the vehicles were sold with specifications, and he specifically refers to this, that caused, quote, technicians to set the transmission fluid level too high during maintenance and repair. He's not presenting opinions or opinion evidence about some general problem with the vehicle, as you rightly point out. He agrees. He thinks the lower levels of the chart are just right. What he's saying is this chart, because it has these higher levels, therefore there is, I don't know if we want to call it a service manual defect or something like that, but therefore there's a problem and that's causing, and the suggestion is that caused Mr. Zuhlsdorf's vehicle's problems. But there's just no evidence to tie that together. There's no evidence to show that. Mr. Zuhlsdorf didn't eat the grape nuts, for my dumb example. You have a service manual procedure Mr. Stapleford says is wrong. You have an issue that Mr. Stapleford says a lot of issues can be the cause of, but you don't have that connection. Thank you, Your Honors. Thank you, Counsel. Hello again, Your Honors. A few quick just document references to follow up, and then if there are any further questions, I'm happy to take them. So first, referring to the same report from Mr. Stapleford, he said that all the class vehicles suffer from a design defect, which is the defect that he discussed. So that's on 8ER1862. So it's not a problem in just some vehicles. It's in all class vehicles, and it is a design defect, according to Mr. Stapleford. Second, I just wanted to cite, because Judge Hurwitz, you were having the issue about whether we had talked about Exhibit R to the Zuhlsdorf Declaration in the court below, and I apologize. We certainly didn't mention it except, I think, in our reply briefing briefly. And so I just wanted to point out, and I didn't find it in the appellate record, but I found it in the actual motion, which we know is part of the record. In our opposition to their renewed summary judgment motion on pages 3 and 4, we basically cite to it continuously because it's in plaintiff's statement of fact, of disputed and undisputed fact, 21, 22, 23, and 24. So we do cite it on pages 3 and 4 of that brief. And I only have 50 seconds, but if you want supplemental briefing, I can find the citation in the appellate report. No, I was – I mean, one of the difficulties is it wasn't cited in your appellate brief, at least in your opening brief, and so – but put that aside for a second. So let's assume that the transmission is defective. Its defect, I take it, is that if filled too high, it will overeat, correct? Which is the level that it's filled at when it rolls off the lot. Well, is there any evidence of that? I think that's what Stapleford is saying in his report. No, he doesn't. He says, I have no idea when it was filled at when it rolls off the lot. But let's assume for a moment that in Mr. Zulsdorf's case, the technician report gives you some evidence that it had a problem when it rolled off the lot. But if it's defective – And all the symptoms that were experienced that were caused by it and all of the other things in the record. Fair enough, at least in 2014. But they fix it. They put it at a lower level. And you've got no testimony from any expert that if this is filled to a lower level, that it's defective. And again, I think we're going in circles here a little bit, but our position is that it wasn't fixed correctly. They told him it wasn't fixed correctly. But the only evidence you have, this report, says it was lowered to a specific level, and that's a level at which your expert says the transmission functions fine. So since that's the evidence you're relying on, I guess my question is, wasn't it fixed in 2014 by your own, by the evidence in this case? I don't think so, Your Honor, and I think the evidence that the problem persisted after that shows that it wasn't fixed. You concede that the problem can be caused by many causes. But there's no evidence of any other causes. But what we've done in 2014 is remove the only cause that you rely on, which is that the transmission fluid might be filled to a higher level. So after 2014, you've got no evidence at all that the cause is the transmission fluid level. Tell me that. I guess if we accept as true that the transmission, assuming what Your Honor says is true. That's what the report says. So then we don't know that it actually was taken to that level. We would have to take the report at its word for that proposition. Well, you can't ask us to take the report at its word for purposes of your case and then say, but somebody might disbelieve it for another case. There's no evidence that the report isn't accurate. I think that's common in civil litigation, to question a witness for some part of their testimony, but not for another part of their testimony, for example. Our questions took your time, but let me ask you one final question. I don't remember looking at it in the record. Did you put forth any specific evidence that your plaintiff actually had the transmission service before 2014? Before he experienced this issue, was it taken to the service station where a technician might have overfilled? I don't believe so. If it turns out, actually just let me ask my co-counsel really briefly. Is he shaking his head in the back? I trust him. No, there was no evidence of the service before. Thank you. I looked in the record for that, too, and that's what's good. Thank you, Your Honors. I really appreciate your time. Thank you. Thank you both for your argument today. The matter is submitted.
judges: NGUYEN, HURWITZ, Ezra